# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 1422 | **DATE** | 7/15/2010 |
| **CASE TITLE** | 520 S. Michigan Ave Assoc vs. Unite Here, Local 1 | | |

**DOCKET ENTRY TEXT**

Defendant's Motion to Dismiss [12] is granted without prejudice. Plaintiffs have until 8/12/10 to file an amended complaint. Status hearing set for 8/19/10 is stricken.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

On March 3, 2010, Plaintiff 520 South Michigan Avenue Associates, Ltd., d/b/a The Congress Plaza Hotel & Convention Center ("Plaintiff") filed a complaint alleging that Defendant UNITE HERE, Local 1 ("Defendant") violated the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. Before the Court is Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendant's motion to dismiss without prejudice.

### BACKGROUND

Construing Plaintiff's complaint and all reasonable inferences in its favor, Plaintiff has its headquarters and principal place of business in Chicago, Illinois. (R. 1, Compl., ¶ 5.) Plaintiff operates the Congress Plaza Hotel at 520 South Michigan Avenue, Chicago, Illinois ("Congress Plaza Hotel") and is an employer in an industry affecting commerce as defined by the NLRA. (*Id.* at ¶¶ 6-7.) Defendant is a union organization that represents employees of the Chicago metropolitan area hospitality industry. (*Id.* at ¶ 8.)

Defendant is the exclusive collective bargaining representative for room attendant employees at the Congress Plaza Hotel. (*Id.* at ¶ 12.) Plaintiff is currently negotiating a new collective bargaining agreement with Defendant because the prior agreement between the parties expired on December 31, 2002. (*Id.* at ¶¶ 13-14.) A work stoppage or strike by members of Defendant union occurred at the Congress Plaza Hotel in June 2003 and has continued to the present day. (*Id.* at ¶ 15.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

According to the complaint, since the commencement of the strike in 2003, Defendant has engaged in a campaign of activities directed at secondary or neutral parties to discourage those parties from doing business with Plaintiff. (*Id.* at ¶¶ 16, 19-20.) One such activity involved the delivery of a heart-shaped package filled with cow manure to scientists scheduled to attend a convention at the Congress Plaza Hotel. (*Id.* at ¶ 17.) This incident occurred on February 10, 2005. (R. 13-1, Loeppke Decl., ¶ 3.) In addition, Defendant "aggressively harassed, threatened and intimidated numerous secondary employees and their customers" to exert indirect pressure on Plaintiff. (R. 1, Compl., ¶ 19.) Moreover, representatives for Defendant publicly stated that the union had engaged in these tactics, which included sending delegations to secondary or neutral parties' places of business to pressure them into cancelling events held at the Congress Plaza Hotel. (*Id.* at ¶ 20.) Furthermore, representatives for Defendant publicly asserted that these tactics have caused Plaintiff to lose $700,000 in revenue since January 2009. (*Id.* at ¶ 21.)

## LEGAL STANDARD

### I.     Motion to Dismiss

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009) (court construes complaint in light most favorable to plaintiff drawing all reasonable inferences in plaintiff's favor).

## ANALYSIS

### I.     The February 10, 2005 Incident

As an initial matter, Defendant has styled the portion of its motion based on the statute of limitations as a motion for summary judgment. Defendant, however, has failed to comply with Local Rule 56.1 which governs motions for summary judgment by failing to file a statement of material facts in support of its motion. The Court accordingly treats Defendant's motion in this regard as a motion to dismiss.

The parties agree that the incident alleged in Paragraph 17 of the complaint involving the heart-shaped

box filled with cow manure occurred on February 10, 2005.  (R. 13-1, Loeppke Decl.,¶ 3.)[1]  This incident therefore falls outside the five-year statute of limitations for tort actions in Illinois, which applies to an unfair labor practices claim in this context.  *BE&K Construction Co. v. Will & Grundy Counties Building Trades Council*, 156 F.3d 756, 763 (7th Cir. 1998); 735 Ill. Comp. Stat. ILCS 5/13-205 (2010).  Plaintiff presents two arguments in an attempt to circumvent this limitation.  First, Plaintiff argues that the February 10, 2005 incident is part of a campaign of abuse that falls within the continuing violation doctrine so that the statute of limitations does not accrue until the date of the last violation.  (R. 18, Plaintiff's Response, 11-12.)  Second, Plaintiff maintains that the true injury from the February 10, 2005 incident would not have occurred until potential convention attendees withdrew attendance from the convention and that these injuries *may have* occurred within the limitations period.  (*Id.* at 12.)  Neither argument is persuasive and the Court accordingly grants Defendant's motion to dismiss without prejudice in this regard.

### A. The Continuing Violation Doctrine

The continuing violation doctrine acts as a defense to the statute of limitations, *Limestone Development Corp., v. Village of Lemont, Illinois*, 520 F.3d 797, 801 (7th Cir. 2008), by delaying its accrual or start date, *Hukic v. Aurora Loan Services*, 588 F.3d 420, 435 (7th Cir. 2009).  The doctrine applies when "a tort involves a continued repeated injury" and "the limitation period does not begin until the date of the last injury or when the tortious act ceased."  *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005).  "The continuing violation doctrine allows a complainant to obtain relief for a time-barred act . . . by linking it with acts that fall within the statutory limitations period."  *Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 396 (7th Cir. 1999).  In this situation, the Court must consider events occurring outside the limitations period because they "shed light on the true character of matters occurring within the limitations period" or because "the full effect of actions that began before the limitations period was not felt until [the union] initiated additional actions during the limitations period."  *United Air Lines, Inc. v. Air Line Pilots A'n, International*, 563 F.3d 257, 270 (7th Cir. 2009).  "It is thus a doctrine not about a continuing, but about a cumulative, violation."  *Limestone*, 520 F.3d at 801.  The continuing violation doctrine, however, does not apply to "a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing."  *Rodrigue*, 406 F.3d at 443; see also *Filipovic*, 176 F.3d at 396 (actions "so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together in a single chain, a single course of conduct, to defeat the statute of limitations").

Plaintiff has not established that the continuing violation doctrine is applicable to the facts as alleged here.  Plaintiff does not allege any additional, related activities that occurred within the limitations period to which the February 10, 2005 incident can be "linked."  *Filipovic*, 176 F.3d at 396.  Contrary to the facts of *United Air Lines*, which involved a slowdown campaign instituted by a pilots' union, the complaint only reveals a discrete violation that occurred on February 10, 2005.  *See* 563 F.3d at 263.  In *United Air Lines*, the pilots' union suggested a series of activities that pilots could take as part of a slowdown campaign to exert pressure on the airline, including calling in sick, using excess fuel, and refusing to operate certain planes.  *Id.* at 261.  The union's campaign included a code phrase signaling the pilots to continue their conduct.  *Id.* at 263.  The Seventh Circuit held that these events were not discrete acts because one pilot calling in sick or using excess fuel did not by itself constitute a violation, yet the conduct considered as a whole caused "hundreds of flight cancellations."  *Id.* at 270.  Conversely, in the present case, Plaintiff merely alleges a single incident that occurred on February 10, 2005 as well as additional unspecified "illegal secondary boycotting" activities since the commencement of the strike in 2003.  (R. 1, Compl., ¶¶ 16-21.)  The only allegation that sheds light on the timing of any of the alleged additional illegal activities, however, is that Defendant asserted that it caused Plaintiff to lose over $700,000 in revenue

---

[1] Because the Court's ruling on Defendant's motion to dismiss based on the statute of limitations impacts the resolution of the remainder of Defendant's motion to dismiss, the Court first addresses Defendant's motion based on the statute of limitations.

*since 2009*. (*Id.* at ¶ 21.) Indeed, there are no allegations in the complaint indicating that Defendant took any other action aimed at Plaintiff prior to January 2009. Moreover, unlike the slowdown campaign described in *United Air Lines*, there is no indication in the complaint that the 2005 incident "shed[s] light on the true character" of the 2009 incidents or that the "full effect" of the 2005 incident was not felt until a later date. 563 F.3d at 263. In short, Plaintiff's complaint does not establish a link between the February 10, 2005 incident and any of the other generally alleged activities occurring four years later; therefore, the continuing violation doctrine does not apply in this instance.

### B. Extension of Damages into the Limitations Period

Plaintiff also argues that the damages stemming from the February 10, 2005 incident may have occurred within the limitations period and that discovery is necessary to determine if Plaintiff was damaged within this time frame. (R. 18, Plaintiff's Response, 12.) Defendant, however, rightly points out that Plaintiff has not sufficiently alleged damages related to this incident. (R. 13, Defendant's Motion to Dismiss, 13-14.) Since instituting a heightened pleading standard, "the Supreme Court has roundly rejected [the] contention that the pleading requirements are relaxed when a plaintiff has not yet had an opportunity to conduct discovery." *Goldberg v. 401 North Wabash Venture LLC*, 2010 WL 1655089, *5 (N.D. Ill. 2010); *see Twombly,* 550 U.S. at 555; *Iqbal*, 129 S. Ct. at 1945. Plaintiff may not argue that discovery will reveal the existence and extent of its damages because that argument "runs counter to the holding of *Twombly*, which dictates that the complaint itself must contain sufficient factual detail to describe the parameters of the [claim] before discovery may commence." *Goldberg*, 2010 WL 1655089, at *5 (quoting *Bissessur v. Indiana Univ. Bd. Of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009)). The Court will not excuse the deficiency of a damages allegation on the grounds that Plaintiff has not yet had the benefit of discovery. *See id.*

For this reason and because Plaintiff cannot invoke the continuing violation doctrine, the allegation contained in Plaintiff's complaint relating to the February 10, 2005 incident is time-barred and the Court grants Defendant's motion to dismiss without prejudice in this regard.

### II. Plaintiff's Remaining Allegations

Defendant also argues that Plaintiff failed to sufficiently state a claim under Section 8(b)(4)(ii)(B) of the NLRA. *See* 29 U.S.C. § 158(b)(4)(ii)(B) (2010). Section 303 of the Labor Management Relations Act ("LMRA") provides injured employers a right to relief if a labor organization engages in unfair labor practices as defined by Section 8(b)(4) of the NLRA. 29 U.S.C. § 187 (2010). Section 8(b)(4)(ii)(B) of the NLRA describes the unfair labor practice known as illegal secondary boycotting as follows:

> It shall be an unfair labor practice for a labor organization or its agents-- . . . (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . (B) forcing or requiring any person . . . to cease doing business with another person . . . [p]rovided, [t]hat nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing[.]

29 U.S.C. § 158(b); *see also Smart v. Local 702 International Brotherhood of Electrical Workers*, 562 F.3d 798, 805 (7th Cir. 2009); *R. L. Coolsaet Construction Co., v. Local 150, International Union of Operating Engineers*, 177 F.3d 648, 654 (7th Cir. 1999). In other words, this provision of the NLRA "permits a union to pressure an employer with whom it has a primary labor dispute. But a union may not advance its cause by pressuring unrelated, secondary employers to stop dealing with the primary employer." *Tri-Gen Inc. v. International Union of Operating Engineers, Local 150, AFL-CIO*, 544 F.3d 1024, 1034 (7th Cir. 2006) (internal citations omitted). The union may attempt to persuade a secondary or neutral party to assist the union's efforts by also boycotting the primary employer; however, Section 8(b)(4)(ii)(B) prohibits the union from improperly pressuring the secondary

party. *NLRB v. Servette, Inc.*, 377 U.S. 46, 54, 84 S. Ct. 1098, 12 L. Ed. 2d 121 (1964). Specifically, the union may not "threaten, coerce, or restrain," 29 U.S.C. § 158(b)(4)(ii)(B), or "exert improper influence," *R. L. Coolsaet Construction*, 177 F.3d at 654, on the secondary or neutral party to pressure it "to cease dealing with the primary employer, thereby advancing the union's goals indirectly," *BE&K Construction Co.*, 156 F.3d at 761.

Construing Plaintiff's factual allegations and all reasonable inferences in its favor, Plaintiff does not sufficiently allege that Defendant violated the NLRA by engaging in illegal secondary boycotting. The pleading standard asserted in *Twombly* "requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Brooks*, 578 F.3d at 581 (rejecting complaints that "merely parrot the statutory language of the claims . . . ."). While there are no instructive cases regarding a claim under the relevant provision of the NLRA at the motion to dismiss stage in the Seventh Circuit, the Court finds the court's analysis in *Point Ruston, LLC v. Pacific Northwest Regional Council of the United Brotherhood of Carpenters and Joiners of America* persuasive. 658 F. Supp. 2d 1266 (W.D. Wa. 2009). In *Point Ruston*, the plaintiff's allegations, like the allegations in the present case, included conclusory statements that the defendant "threatened and intimidated neutral entities to discourage them from dealing with [the plaintiff]." *Id.* at 1278. The district court, however, also took into account allegations of a letter written by the union to a neutral party as well as allegations of picketing, leafleting, and bannering at a neutral party's location. *Id.* These specific allegations included the text of the letter and leaflets, the identities of the neutral parties, and the dates that some of the events occurred. *Id.* The court found that while the "claim [came] close to providing merely a recitation of the elements," the allegations gave rise to a plausible claim under the NLRA. *Id.*; *see also BE&K Construction Co. v. Will & Grundy Counties Building Trade Council, AFL-CIO*, 1996 WL547214, *7 (N.D. Ill. 1996) (holding that allegations that the defendant unions threatened specifically identified construction companies on September 18, 1995 with "violence and illegal picketing" were sufficient to survive a motion to dismiss).[2]

In its complaint, Plaintiff maintains that Defendant "aggressively harassed, threatened and intimidated" a number of unidentified secondary or neutral parties "in order to bring indirect pressure on the primary employer." (R. 1, Compl., ¶ 19.) This and many of the allegations in the complaint, like the conclusory allegations in *Point Ruston*, merely recite or parrot the language of Section 8(b)(4)(ii)(B) of the NLRA. (*Id.* at ¶¶ 9-11, 16, 18-19.) In fact, there are only two factual allegations in Plaintiff's complaint that contain any specificity, one of which, as discussed above, is time-barred as pled by Plaintiff. (*Id.* at ¶¶ 17, 20-21.) The only other allegation containing any specificity is Plaintiff's claim that Defendant asserted that the union has engaged in aggressive tactics such as sending "large delegations" to potential convention and conference attendees' places of business to "pressure them [secondary parties] into cancelling their participation in events taking place at the hotel such as conventions and parties . . . ." (*Id.* at ¶ 20.) Plaintiff alleges that Defendant's representatives stated that "these tactics have been responsible for removing more than $700,000.00 in revenues that would otherwise have been earned by Congress Plaza Hotel." (*Id.* at ¶ 21.) These allegations, however, only refer to statements made by Defendant's representatives. Plaintiffs do not actually allege that these events took place. Moreover, the single, conclusory allegation generally summarizing the allegedly illegal activities, (*id.* at ¶ 20), unlike the specific allegations in *Point Ruston*, does not give fair notice of the claim or its grounds to Defendant. *See Twombly,* 550 U.S. at 555. While the complaint summarizes the parties' past relationship (*id.* at ¶¶ 12, 13, 14, 15) and details the relevant statutory provisions at issue (*id.* at ¶¶ 9, 10, 11, 18), the complaint does not identify any secondary parties allegedly "harassed, threatened and intimidated" by Defendant (*id.* at ¶ 19.), any dates on which Defendant allegedly sent delegations to secondary parties' places of business, the locations of the secondary parties' places of business, or facts showing that secondary parties withdrew attendance at events taking place at the Congress Plaza Hotel. Indeed, Plaintiff alleges no facts about the incidents to which Defendant's representatives referred in their statements.

While the Court agrees that Defendant's attack on isolated allegations contained in the complaint is improper, even considering the allegations as a whole and in the light most favorable to Plaintiff, the allegations

---

[2] Although decided pre-*Twombly*, the holding in this case is instructive.

contained in the complaint do not provide sufficient facts to state a plausible claim or to give Defendant fair notice of the claims against it. *See Twombly,* 550 U.S. at 555. The allegations therefore do not rise above the speculative level, *id*, and thus, the Court grants Defendant's motion to dismiss the complaint without prejudice.[3]

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss without prejudice.

---

[3] Because the Court finds that Plaintiff has failed to state a claim sufficient to withstand a 12(b)(6) motion to dismiss, the Court need not address Defendant's request to strike Plaintiff's request for attorneys' fees.